882 So.2d 503 (2004)
Marc OSHEROFF and Osheroff Wittels Family Corp., a Florida corporation, Appellants,
v.
RAUCH WEAVER MILLSAPS & CO., a Florida corporation, Maddux & Co., a Florida corporation, Frassetto Properties Partnership, a New Jersey general partnership, and Salvatore V. Frassetto, both individually and as a general partner of Frassetto Properties Partnership, Appellees.
No. 4D02-5077.
District Court of Appeal of Florida, Fourth District.
September 22, 2004.
*504 Steven M. Katzman of Katzman, Wasserman & Bennardini, P.A., Boca Raton, for appellants.
Robert P. Frankel of Robert P. Frankel & Associates, P.A., Miami, for appellees Rauch Weaver Millsaps & Co. and Maddux & Co.

ON MOTION FOR REHEARING
STEVENSON, J.
We deny the motion for rehearing, but in clarification, we withdraw the original opinion filed on May 12, 2004, and substitute the following in its place.
This is an appeal from a jury verdict and final judgment entered in favor of the brokers in a lawsuit alleging failure to pay the real estate brokers' commission against the sellers, tortious interference with an advantageous business relationship against the buyers, and civil conspiracy against the buyers and sellers. We affirm in part and reverse in part.
In summary, the seller, Frassetto Properties Partnership ("FPP"), a New Jersey general partnership, had signed a listing agreement with the brokerage firm of Rauch, Weaver, Millsaps & Co. ("Rauch Weaver") to negotiate a sale for property which consisted of 9.7 acres located in Plantation, Florida. After the written agreement expired, Rauch Weaver continued to "show" the property with FPP's consent. Subsequently, the property was shown to Marc Osheroff by Michael Stern, a licensed real estate broker with appellee, Maddux & Co. Osheroff, through Stern and Rauch Weaver, attempted to negotiate a contract to purchase the property on behalf of Osheroff Wittels Family Corporation ("OWFC"). After several months of discussions, the negotiations stalled and did not result in a completed contract. Approximately fourteen months later, Osheroff and FPP struck a deal of their own for Osheroff to purchase the property.
After Rauch Weaver and Maddux & Co. ("the brokers") found out about the contract, they filed this lawsuit against FPP and Salvatore V. Frassetto (hereinafter referred to as "the sellers" or "the Frassetto defendants") and Marc Osheroff and Osheroff Wittels Family Corp. ("the buyers" or "the Osheroff defendants"). The case went to trial on a three-count complaint filed by the brokers and a counterclaim filed by the Osheroff defendants. On count I, the jury found that the Frassetto defendants breached the real estate contract and awarded the brokers $60,000 in damages. On count II, the jury found that the Osheroff defendants tortiously interfered with the brokers' contract with the sellers and awarded the brokers $50,000 in *505 damages. Finally, on count III, the jury found that the Osheroff defendants and the Frassetto defendants conspired to deprive the brokers of their real estate commission and awarded the brokers $20,000 in damages. On the counterclaim, the jury found that the brokers made negligent misrepresentations during the course of the contract negotiations and awarded the Osheroff defendants nominal damages in the amount of $1.00.
After the jury returned its verdict, the Osheroff defendants filed a motion for directed verdict, or to set aside the verdict, or, alternatively, for a new trial. Before the hearing on the post-trial motions, the brokers and sellers settled, with the sellers agreeing to pay the brokers $50,000 to settle their claims. The trial court subsequently denied the post-trial motions, and later entered a final judgment in favor of the brokers and against the remaining defendants (the Osheroff defendants) in the total sum of $70,000 plus prejudgment interest totaling $17,471.58.

The brokers' claim for a commission
The law in this area has been well established for quite some time, although its application to a given set of facts is a bit more troublesome. In Taylor v. Dorsey, 155 Fla. 305, 19 So.2d 876, 878 (1944), the court explained that a broker with a non-exclusive listing will be entitled to a commission as the procuring cause, "[i]f the broker has brought the parties together and a sale is effected as a result of continuous negotiations inaugurated by him." In order to be entitled to the commission, the "continuous negotiations" between the seller and buyer must be conducted and orchestrated by the broker. See Shuler v. Allen, 76 So.2d 879, 883 (Fla.1955). If the broker abandons his attempts to bring the parties together and they later reach a deal on their own, the broker is not entitled to a commission. However, if the seller and buyer intentionally exclude the broker from the negotiations and then strike a deal, the broker is still entitled to a commission. See Sheldon Greene & Assocs., Inc. v. Rosinda Invs., N.V., 475 So.2d 925, 927 (Fla. 3d DCA 1985); Nat'l Airlines, Inc. v. Oscar E. Dooly Assocs., Inc., 160 So.2d 53 (Fla. 3d DCA 1964).
Here, although largely circumstantial, we find that there was substantial competent evidence in the record to support the verdict in all respects. See, e.g., Easton-Babcock & Assocs., Inc. v. Fernandez, 706 So.2d 916 (Fla. 3d DCA 1998)(whether a broker is the procuring cause of a sale is a question of fact that the jury must determine from the surrounding circumstances). The buyers and sellers declared that continued negotiation to reach an agreement was fruitless in October of 1996, but later reached a deal of their own without the brokers' involvement some fourteen months later. The jury heard the testimony, saw the witnesses and resolved the questions of credibility and fact in favor of the brokers. Reasonable inferences from the evidence, including discrepancies in the testimony concerning when the principals went into action again after ostensibly having given up on reaching an agreement, could have led the jury to conclude that Osheroff's claim that he had abandoned all interest in the property after the first deal collapsed was less than credible. See Sheldon Greene, 475 So.2d at 928 (finding liability for broker's commission where the broker showed a hotel property twice to the purchasers who said they were not interested in the property, yet a year later contacted the owner directly and purchased the hotel).

The setoff issue
To recap, the jury awarded $60,000 in favor of the brokers and against the sellers *506 (the Frassetto defendants) on count I, breach of the real estate contract; $50,000 in favor of the brokers and against the buyers (the Osheroff defendants) on count II, tortious interference; and $20,000 in favor of the brokers and against the buyers and sellers, together, on count III, conspiracy to deprive the brokers of their commission. The brokers settled with the sellers for $50,000 altogether. The Osheroff defendants claim that the $50,000 paid by the sellers should be setoff against the $50,000 tortious interference award, and the $20,000 civil conspiracy award, assessed against them as buyers. The Osheroff defendants argue that these awards were all predicated on a single and identical economic injury, i.e., the loss of the real estate commission, and that to deny setoff of the $50,000 settlement paid by the sellers would allow a double recovery.
The Osheroff defendants' claim for setoff of the sellers' $50,000 settlement against the damages awarded against them on the tortious interference claim fails for a number of reasons. Our supreme court recently noted that:
Florida law regarding setoffs is found in sections 46.015(2), 768.041(2), and 768.31(5), Florida Statutes (1997). Each of these statutes presupposes the existence of multiple defendants jointly and severally liable for the same damages. See Wells v. Tallahassee Mem'l Reg'l Med. Ctr., Inc., 659 So.2d 249, 253 (Fla.1995).
D'Angelo v. Fitzmaurice, 863 So.2d 311, 314 (Fla.2003)(footnotes omitted). The Osheroff defendants cannot be jointly liable with the Frassetto defendants for any breach of contract claim because the Osheroff defendants had no agreement with the brokers to be responsible for any brokerage fees. On the other hand, the Frassetto defendants cannot be jointly liable with the Osheroff defendants on the tortious interference claim since the Frassetto defendants were a party to the contract.
Additionally, this court has held that the settlement of a breach of contract action does not preclude recovery on a tortious interference claim involving the same contract because while the damages recoverable by each cause of action are overlapping, they are not necessarily co-extensive. See Wright v. Nigh, 399 So.2d 515 (Fla. 4th DCA 1981). In the instant case, the Osheroff defendants failed to demonstrate that all of the legally recoverable losses that the brokers sustained due to both the breach of contract claim and the tortious interference claim were covered by the sellers' $50,000 settlement and the $50,000 judgment awarded against the Osheroff defendants. See §§ 46.015(2), 768.041, 768.31, Fla. Stat.; see also NationsBank, N.A. v. KPMG Peat Marwick LLP, 813 So.2d 964 (Fla. 4th DCA), review denied, 835 So.2d 267 (Fla.2002); Bisaccio v. Brown, 366 So.2d 510 (Fla. 2d DCA 1979). Of note, the breach of contract claim against the sellers included a demand for attorney's fees, whereas the tortious interference claim against the Osheroff defendants did not.
Nevertheless, the Osheroff defendants raise an additional, meritorious argument with respect to the civil conspiracy claim. Here, the Osheroff defendants maintain that the civil conspiracy and tortious interference claims encompassed the same damages. We have examined the pleadings and the argument made by the brokers at trial and agree with the Osheroff defendants on this issue. "Where a complaint claims damages in two counts based on the same facts, only one cause of action is alleged despite the fact that the second count charges a civil conspiracy to commit the tortious acts, and only one recovery is permissible." Fish v. Adams, 401 So.2d 843, 846 (Fla. 5th DCA 1981). *507 Here, there was no basis for the trial court to enter separate monetary judgments against the Osheroff defendants for both civil conspiracy to breach the contract and tortious interference with the contract. The brokers are entitled to judgment on the higher jury verdict which was reached on the tortious interference claim.[1]
We have considered the other issues raised on appeal, but find no reversible error. Accordingly, the judgment on review is affirmed in part and reversed in part. We remand with instructions that the trial court amend the final judgment consistent with this opinion.
STONE and WARNER, JJ., concur.
NOTES
[1] We recognize, as the brokers argue, that the jury entered an award for separate amounts on the civil conspiracy claim and the tortious interference claim, which suggests that the jury may have taken it upon itself to apportion damages either between the parties or between the claims. Even if this were the case, the jury had no right to do so based on the evidence presented and the legal instructions given by the trial judge. See Air Fla., Inc. v. Hobbs, 477 So.2d 40 (Fla. 3d DCA 1985); Besett v. Basnett, 437 So.2d 172 (Fla. 2d DCA 1983).