854 So.2d 211 (2002)
Charles R. DORNBACH and Suzanne K. Dornbach, Appellants,
v.
Louis F. HOLLEY and Janet K. Holley, Appellees.
No. 2D01-4527.
District Court of Appeal of Florida, Second District.
December 27, 2002.
Amy S. Farrior and Mark P. Buell, of Schropp, Buell & Elligett, P.A., Tampa, for Appellant.
No appearance for Appellee.
Jack Emory Farley, Lakeland, for Amicus Curiae State of Florida, Department of Children and Family Services.
DAVIS, Judge.
Charles R. and Suzanne K. Dornbach challenge the circuit court's final judgment entered in favor of Louis F. and Janet K. Holley that permanently enjoined the Dornbachs from allowing their residential real property to be used for the operation of a community residential home. We reverse.
The Dornbachs own residential real property in a subdivision known as Lake Thomas Woods. They leased their property *212 to Res-Care Florida, Inc., for use as a community residential home pursuant to chapter 419 of the Florida Statutes. The group home was intended to house between four and six developmentally disabled adults. The Holleys, who also own residential real property in the same subdivision, objected to this use of the Dornbachs' property. The Holleys filed a petition in the circuit court seeking injunctive relief, alleging that the group home use violated specific provisions of the subdivision's restrictive covenants. After the Dornbachs filed their answer and affirmative defenses, both parties moved for summary judgment. Following a hearing, the trial court granted the Holleys' motion for summary judgment, granting them a permanent injunction which prohibited the Dornbachs from using the property as a group home. The Dornbachs appeal the final judgment and permanent injunction.
The restrictive covenants of the subdivision at issue provide:
1. Each lot shall be used expressly and exclusively for single-family, private residence purposes.
2. No business activity shall be conducted or carried on in connection with the residential usage of any lot or parcel.
The Holleys alleged that the group home use violates both of these restrictions. The Dornbachs responded by denying that the use violated the restrictions and arguing that the enforcement of the restrictions is not only contrary to chapter 419, but such enforcement violates both Florida and federal law by discriminating against the disabled. Moreover, they contend that the restrictions are contrary to public policy as they attempt to do by private restriction what public ordinances and statutes cannot do. The trial court found that the group home use did, in fact, violate the restrictive covenants and enjoined the Dornbachs from allowing any use of the home other than as a single-family residence.
Chapter 419 provides for the establishment of community residential homes. Section 419.001(2), Florida Statutes (2000), specifies that a community residential home with six or fewer residents "shall be deemed a single-family unit and a non-commercial, residential use for the purpose of local laws and ordinances." The legislature intended to protect such group homes from local zoning ordinances that would exclude them from the traditional single-family neighborhood. However, the Holleys argued that section 419.001(2) does not apply to private deed restrictions.
This court addressed this issue in Baldwin v. Nature's Hideaway, Phase I-B Homeowners Association, Inc., 613 So.2d 1376 (Fla. 2d DCA 1993). In Baldwin, the trial court found that a neighborhood resident who allowed three unrelated elderly adults to live in the home under the adult foster care program violated the deed restriction that prohibited any use that may be or become a nuisance. The trial court found that the use did violate the restrictive covenant and entered an injunction prohibiting such use.
On review, this court reversed, interpreting the language of the covenant to mean that a showing must be made that the use was or might become a nuisance and that based on the record, there were still issues of fact that precluded the granting of summary judgment. However, the majority also opined: "We agree with the appellee that section 419.001(2) by its express terms does not apply to private deed restrictions, nor does it or Chapter 419 express a public policy of the State of Florida which overrides private deed restrictions." Id. at 1377. In his concurrence, Judge Altenbernd suggested that this conclusion was not necessary to the *213 holding of the court and after discussing the public policy issues, concluded: "I am not prepared to rule that trial courts lack the authority to refuse to honor such dubious restrictions under the public policies expressed in Chapter 419, Florida Statutes." Id. at 1378. The trial court below relied on the Baldwin majority opinion in entering the injunctive relief. However, in Baldwin, the group home was to house elderly persons. Because the elderly are not included in the list of protected persons under the Federal Fair Housing Act Amendments of 1988 nor the Florida Fair Housing Act, Baldwin does not resolve the issue raised here.
At the summary judgment hearing and in their motion for rehearing, the Dornbachs argued that the enforcement of these restrictive covenants is contrary to the United States Fair Housing Amendments Act of 1988 (FHAA). This Act added handicapped persons to those protected from discrimination in buying and renting housing facilities. The Florida Legislature essentially codified the Federal Act when it enacted the Florida Fair Housing Act. See §§ 760.20-.37, Fla. Stat. (2000). In language nearly identical to the FHAA, section 760.23(7)(b) provides that it is unlawful to discriminate in the rental of or to "otherwise make unavailable" a dwelling because of the handicap of any person intending to reside in the dwelling after it is rented.[1] Further, discrimination is defined so as to include a "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." § 760.23(9)(b).
In considering the application of the Florida Fair Housing Act to the present situation, we find the application of the FHAA by the federal courts to be instructive and persuasive. In applying the terms of the FHAA, the federal courts have determined that one may be guilty of discrimination in any one of three ways. First, the Act prohibits intentional discriminatory conduct towards a handicapped person. See Martin v. Constance, 843 F.Supp. 1321 (E.D.Mo.1994). Second, the Act prohibits incidental discrimination, that is, an act that results in making property unavailable to a handicapped person. Id. Third, the Act prohibits an act that fails to make a reasonable accommodation that would allow a handicapped person the enjoyment of the chosen residence. See Advocacy Ctr. for Perss. with Disabilities, Inc. v. Woodlands Estates Ass'n, 192 F.Supp.2d 1344 (M.D.Fla.2002). We are persuaded that, given the similarity of language and purpose in the federal and the Florida legislation, this three-pronged approach applies equally to the Florida Fair Housing Act.
Accordingly, based on the record below, we conclude that the Holleys' action to enforce the deed restriction is impermissibly discriminatory. Their action was premised on the fact that the residence was to be a group home for developmentally delayed adults. Whether the Holleys' action was motivated by a desire to prevent these disabled persons from living in the neighborhood or simply by their objection to any group home is not clear from the record. Therefore, it was error to decide the absence of intentional discrimination by summary judgment. However, the record does show that by enforcing the restriction, incidental discrimination results since the residence is made unavailable *214 for the handicapped. See Rhodes v. Palmetto Pathway Homes, Inc., 303 S.C. 308, 400 S.E.2d 484 (1991). Finally, public policy as stated in section 419.001(2) and in section 393.062, Florida Statutes (2000),[2] supports the premise that the group home is the functional equivalent of a single-family residential unit and as such does not pose any threat to the purpose justifying the deed restrictions at issue. Thus, to refuse to waive these restrictions is to refuse to offer a reasonable accommodation, which also amounts to discrimination as defined by statute. See Advocacy Ctr., 192 F.Supp.2d 1344.
Accordingly, the record shows that the enforcement of the restrictive covenants is discriminatory in at least two of the three ways identified in Martin, 843 F.Supp. 1321, and as such, is contrary to state and federal law. Therefore, the trial court erred in entering the final judgment and injunction. The final judgment is reversed, and the matter is remanded with instructions that the trial court should enter judgment in favor of the Dornbachs.
Reversed and remanded.
BLUE, C.J., and FULMER, J., concur.
NOTES
[1] "Handicap" is defined to include a person who has a developmental disability. § 760.22(7)(b).
[2] Section 393.062, Florida Statutes (2000), provides, in part:

The Legislature declares that the goal of this act, to improve the quality of life of all developmentally disabled persons by the development and implementation of community-based residential placements, services and treatment, cannot be met without ensuring the availability of community residential opportunities for developmentally disabled persons in the residential areas of this state.... The Legislature intends that such residences shall be considered and treated as a functional equivalent of a family unit and not as an institution, business, or boarding home....