Jason A. SILVERMAN, Plaintiff,

v.

WELLS FARGO INSURANCE SER-VICES USA, INC., a North Carolina corporation; Jeffrey Samas, an individual; and Richard Rodriguez, an individual, Defendants.

Case No. 1:13–23720–CIV.

United States District Court,
S.D. Florida.

Signed April 3, 2014.

Richard Jay Burton, Marc A. Burton, The Burton Firm, Miami, FL, for Plaintiff.

Theresa Marie Gallion, Fisher & Phillips LLP, Tampa, FL, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND CASE TO STATE COURT

PATRICIA A. SEITZ, District Judge.

THIS MATTER is before the Court on Plaintiff's Motion to Remand Case to State Court for Lack of Subject Matter Jurisdiction [DE–12]. Plaintiff Jason A. Silverman, a Florida citizen, alleges five state law counts against Defendant Wells Fargo Insurance Services USA, Inc. ("Wells Fargo"), a North Carolina corporation. Two of these counts are also against Defendants Jeffrey Samas and Richard Rodriguez, both Florida citizens.[1] Defendants contend that Samas and Rodriguez were fraudulently joined and that their citizenship must therefore be disregarded in assessing this Court's diversity jurisdiction. The amount in controversy satisfies the jurisdictional threshold.

Having reviewed the Complaint [DE–1–1], Wells Fargo's Notice of Removal [DE–1], Defendants' Motion to Dismiss [DE–9], Defendants' Removal Status Report [DE–11], Plaintiff's Motion to Remand Case to State Court for Lack of Subject Matter Jurisdiction, Defendants' response and Plaintiff's reply thereto [DE–14, 16], Plaintiff's two Notices of Supplemental Authority [DE–18, 22], and the applicable case law, the Court cannot find that there is no possibility that Silverman can establish a cause of action against Samas and Rodriguez under the circumstances alleged in the Complaint. Therefore, the Motion to Remand is GRANTED and the case is remanded to the Circuit Court of the 11th Judicial Circuit in and for Miami–Dade County, Florida for further proceedings.

## 1. FACTUAL BACKGROUND

Wells Fargo is a North Carolina corporation engaged in the insurance business. Silverman, a citizen of Florida, was employed by Wells Fargo in its office in Coconut Grove, Florida as a commercial account executive from approximately 2000 until November 6, 2012. (Compl. ¶¶ 11–12.) Samas was Silverman's supervisor during this time and is currently a Managing Director in Wells Fargo's Coconut Grove office. (Id. ¶¶ 4, 16.) Rodriguez was one of Silverman's coworkers and is currently a Senior Vice President in Wells Fargo's Coconut Grove office. (Id. ¶¶ 4, 16.) Samas and Rodriguez are both citizens of Florida. (Notice of Removal ¶ 15.)

According to the Complaint, in or around 2010, Wells Fargo, through Samas, began imposing upon Silverman unrealistic revenue generation requirements that were not imposed upon other account executives. (Compl. ¶¶ 19–26, 37.) Furthermore, he was forbidden from bidding on new accounts already being serviced by other insurance agencies, which rendered these requirements especially unattainable. (Id. ¶¶ 23–26.)

In May 2012, he reported "numerous instances of illegal and unethical conduct" to Wells Fargo's Ethics Department, including non-compete agreements with other insurance agencies and the sharing of commissions with unlicensed third parties such as developers and management companies. (Id. ¶¶ 27–32.) He threatened to report this conduct, which included alleged illegal and ethical conduct by all of the Defendants in this case, to "the appropri-

---

**1.** Counts I (Unjust Enrichment), II (Quantum Meruit), and IV (Wrongful Termination / Retaliatory Discharge) are against Wells Fargo only. Counts III (Conspiracy to Deprive Silverman of His Commission) and V (Conspiracy towards Wrongful Termination / Retaliatory Discharge) are against all Defendants.

ate government and/or law enforcement agencies." (*Id.* ¶ 32.) In November 2012, in retaliation for Silverman's threat to report illegal conduct, Wells Fargo terminated Silverman's employment and failed to pay him the brokers' commissions that he was owed. (*Id.* ¶¶ 36, 46.)

Silverman alleges that Wells Fargo, Samas, and Rodriguez all conspired (1) to deprive him of commissions and (2) to cause his wrongful termination in violation of Florida's Whistleblower Act. (*Id.* ¶¶ 65–71, 78–85.) He further states that Samas and Rodriguez each had an "independent, personal stake" in the objects of both conspiracies because (1) they each benefitted financially from the money that Wells Fargo would have paid to Silverman (*id.* ¶¶ 48–49) and (2) they each held personal animus against Silverman due to his negative reaction to their bragging about a "shake-down." (*Id.* ¶¶ 40–45.)

On August 28, 2013, Silverman filed suit in the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County, Florida, captioned *Jason A. Silverman v. Wells Fargo Insurance Services USA, Inc., Jeffrey Samas, & Richard Rodriguez,* Case No. 13–28214–CA–01. Wells Fargo timely removed the case and all Defendants moved to dismiss Counts III and V. Silverman then moved to remand.

## 2. LEGAL STANDARD

A defendant removing a case on the basis of fraudulent joinder has the burden of proving, by clear and convincing evidence, that either: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Henderson v. Washington Nat. Ins. Co.,* 454 F.3d 1278, 1281 (11th Cir.2006) (quoting *Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.

1997)). As there is no allegation of fraudulently pled facts, the inquiry concerns the first prong.

The standard is high. "[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Florence v. Crescent Res., LLC,* 484 F.3d 1293, 1299 (11th Cir.2007); *see also Crowe,* 113 F.3d at 1542 ("there need only be a reasonable basis for predicting that the state law *might* impose liability on the facts involved") (emphasis in . original). When applying this standard, a court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainty about the applicable law in the plaintiff's favor. *Crowe,* 113 F.3d at 1538. A plaintiff's subjective motivation for joining the resident defendant is irrelevant. *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.,* 436 Fed.Appx. 888, 893 n. 3 (11th Cir.2011).

This inquiry precedes any analysis of the sufficiency of the pleadings; if the federal courts lack jurisdiction, then "the decision as to the sufficiency of the pleadings is for the state courts." *Henderson,* 454 F.3d at 1284. As such, a complaint need not meet the pleading requirements of the Federal Rules of Civil Procedure in order to defeat a claim of fraudulent joinder. *See, e.g., id.* (finding no fraudulent joinder even though the complaint did not meet the requirements of Rule 9(b)).

## 3. ANALYSIS

Silverman brings two counts against Samas and Rodriguez. These counts seek, as a remedy, compensation for "the value of the services provided" from Wells Fargo

and punitive damages[2] against all Defendants. (Compl. ¶¶ 71, 85.)

Neither count states a claim on which state law might impose liability. However, evaluating the underlying factual allegations in the light most favorable to the plaintiff and resolving any uncertainty about the applicable law in the plaintiff's favor, the Court cannot conclude that there is no possibility that the factual allegations in the Complaint would not provide a basis for liability under Florida law. Therefore, remand is necessary.

### 3.1. Count V: "Wrongful Termination / Retalitory [sic] Discharge"

█ Count V alleges that Wells Fargo, Samas, and Rodriguez conspired to terminate Silverman in violation of the Florida Whistleblower Act ("FWA"), which prohibits employers from taking any retaliatory personnel action against an employee because the employee has "threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation." Fla. Stat. Ann. § 448.102. However, *Tracey–Meddoff v. J. Altman Hair & Beauty Ctr., Inc.*, 899 So.2d 1167 (Fla. 4th DCA 2005) squarely forecloses any claim against individual officers for liability under the FWA, whether through a conspiracy claim or otherwise, because the FWA applies only to employers.[3] Samas and Rodriguez are not employers. Therefore, Count V fails to provide a reasonable basis for pre-

dicting that the state law might impose liability.

### 3.2. Count III: "Conspiracy to Deprive Silverman of His Commission"

█ Count III alleges that (1) Wells Fargo failed to pay Silverman his commissions and (2) Samas and Rodriguez played a role in his termination and in the nonpayment of his commissions because (1) of personal animus and (2) they each benefited financially from the money that otherwise would have gone to pay his commissions. Though framed as a "conspiracy to deprive Silverman of his commission," Count III is thus essentially a terminated employee's claim for (1) unpaid compensation from his employer and (2) punitive damages against his supervisor and co-worker for conspiring with his employer to deny him his compensation.

The cause of action for conspiracy to deprive someone of a commission does not apply in this circumstance.[4] In every reported Florida case recognizing a cause of action for conspiracy to deprive a plaintiff of a commission, a broker had facilitated a transaction and the transacting parties then allegedly conspired to deprive the broker of a commission *for that transaction*. See, e.g., *Osheroff v. Rauch Weaver Millsaps & Co.*, 882 So.2d 503 (Fla. 4th DCA 2004) (buyers and sellers had conspired to deprive the brokers of their commission); *First Realty Corp. of Boca Raton v. Standard Steel Treating Co.*, 268 So.2d 410 (Fla. 4th DCA 1972) (suit for "a

---

**2.** As currently pled, the Complaint seeks no remedy at all from Samas or Rodriguez, but rather seeks leave to amend the Complaint to seek punitive damages upon the proffer of appropriate evidence. .(Compl. ¶¶ 71, 85.) For purposes of assessing fraudulent joinder, the Court will treat the Complaint as seeking punitive damages from Samas and Rodriguez.

**3.** The FWA defines "employer" as "any private individual,. firm, partnership, institution, corporation, or association that employs ten or more persons." Fla. Stat. Ann. § 448.101.

**4.** Count III also fails to allege an agreement among the Defendants. Though typically fatal To a claim of conspiracy, the Court will ignore this omission for purposes of assessing fraudulent joinder.

commission from the seller on both implied contract and quantum meruit, and damages from both defendants for conspiracy to deprive appellant of the commission"); *Mead Corp. v. Mason*, 191 So.2d 592, 594 (Fla. 3d DCA 1966) ("although a seller may be liable for a commission, the purchaser and the seller may also be jointly liable for conspiring together to deprive the broker of his commission").

*Rumbaut & Co., Inc. v. Caribevision Holdings, Inc.*, No. 10–59892 CA 23 (Fla. 11th Cir.Ct. Mar. 20, 2014) [*see* DE–18, 22] demonstrates only that a claim for conspiracy to deprive a plaintiff of a commission may lie outside of the real estate context. In that case, a broker was a procuring cause of a joint venture between two media properties, and the media properties were found liable for conspiring to deprive the broker of a brokerage commission. *Rumbaut* (Dec. 20, 2013) (jury verdict) at 5. However, Silverman is not seeking a commission for procuring a relationship among the Defendants; he is alleging that some of his co-workers conspired with his employer, causing his employer not to pay him his rightful compensation. This is not the sort of conspiracy to which the cause of action for conspiracy to deprive a broker of a commission applies. Therefore, Count III fails to provide any reasonable basis for predicting that the state law might impose liability.

### 3.3. Tortious Interference

 However, joinder is fraudulent only if there is "no possibility state law might impose liability on a resident defendant under the circumstances alleged in the complaint." *Henderson*, 454 F.3d at 1281. The analysis is therefore not limited to the particular causes of action under which a plaintiff seeks a remedy. Silverman has alleged facts that might support imposing liability on Samas and Rodriguez under the theory of tortious interference with an advantageous business relationship.

 To state a claim for tortious interference with an advantageous business relationship under Florida law, a plaintiff must establish five elements: (1) the existence of a business relationship under which the claimant has rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship; (4) by a third party; and (5) damage to the claimant caused by the interference. *Sloan v. Sax*, 505 So.2d 526, 527–28 (Fla. 3d DCA 1987). In an action by an employee against his supervisor for interfering with the plaintiff's employment relationship, a supervisor generally does not constitute a "third party" and is therefore entitled to interfere. *See Doyal v. School Board of Liberty County*, 415 So.2d 791 (Fla. 1st DCA 1982). However, the privilege to interfere "enjoyed by a party that is integral to the business relationship is not absolute. The privilege is divested when the defendant acts solely with ulterior purposes and the advice to terminate is not in the principal's best interest." *O.E. Smith's Sons, Inc. v. George*, 545 So.2d 298, 299 (Fla. 1st DCA 1989) (citations omitted).[5]

Silverman alleges damages resulting from an intentional and unjustified interference by Samas and Rodriguez with his employment relationship, which meets the first, second, third, and fifth elements. Furthermore, he alleges that Samas "mali-

---

5. *See also McCurdy v. J.C. Collis*, 508 So.2d 380, 383 (Fla. 1st DCA 1987) ("A qualified Privilege to interfere is not negated by concomitant evidence of malice. It is only when malice is the *sole* basis for interference that it will be actionable.") (emphasis in original) (citation omitted).

ciously instructed employees and agents of Wells Fargo" not to pay his commissions and that Rodriguez and Samas together caused Wells Fargo to terminate him because of personal animus and for their own personal financial benefit. (Compl. ¶¶ 68–70.) This may satisfy the fourth element. *See Rudnick v. Sears, Roebuck and Co.,* 358 F.Supp.2d 1201 (S.D.Fla.2005). Therefore, evaluating factual allegations in the light most favorable to the plaintiff and resolving any uncertainty about the applicable law in the plaintiff's favor, the Court cannot conclude that there is no possibility that the allegations in the Complaint would satisfy all five elements of a claim for tortious interference with an advantageous business relationship under Florida law.

### 4. CONCLUSION

For the reasons above, the Defendant has not met its burden of proving, by clear and convincing evidence, that there is no possibility the plaintiff can establish a cause of action against the resident defendant. The Court therefore cannot find that joinder was fraudulent. Accordingly, it is

ORDERED that

1. Plaintiff's Motion to Remand Case to State Court for Lack of Subject Matter Jurisdiction [DE–12] is GRANTED.

2. This case is hereby REMANDED to the Circuit Court of the 11th Judicial Circuit in and for Miami–Dade County, Florida for further proceedings.

3. This case is CLOSED. Any pending deadlines or hearings are CANCELLED and any pending motions not otherwise ruled upon are DENIED AS MOOT.